**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| BOBBIE CARNE; ALL MY TOMORROWS PET RESCUE a California corporation; ELEANOR TRIBOLETTI; CAROLINE GRAYSON,<br><br>**Plaintiffs**<br><br>v.<br><br>STANISLAUS COUNTY ANIMAL SERVICES AGENCY; ANNETTE PATTON, in her individual and official capacities; CONNIE HOOKER, in her individual and official capacities; and DOES 1-50 inclusive,<br><br>**Defendants** | CASE NO. 1:19-CV-1151 AWI SKO<br><br>ORDER RE: MOTION TO DISMISS, MOTION FOR PARTIAL REMAND, AND MOTION FOR LEAVE TO AMEND<br><br>(Docs. 4, 7, and 11) |

**I. Introduction**

Plaintiffs Bobbie Carne and Caroline Grayson are persons who have volunteered or been to the Stanislaus County animal shelter ("Stanislaus Shelter"). Plaintiff All My Tomorrows Pet Rescue is a nonprofit animal rescue organization which has attempted to take animals from the Stanislaus Shelter to prevent their euthanization. Plaintiff Eleanor Trivoletti is the founder and CEO of All My Tomorrows Pet Rescue. Defendant Stanislaus County Animal Services Agency is a political subdivision of the state of California which operates the Stanislaus Shelter. Defendant Annette Patton is the Director and Defendant Connie Hooker is the Animal Control Supervisor of the Stanislaus Shelter.

The Hayden Act is a California law passed in 1998 that regulated the treatment of animals in state run animal shelters, generally required the release of the animals to rescue organizations, and limited the ability of shelters to euthanize animals. Plaintiffs allege that Defendants have

violated the Hayden Act in the operation of the Stanislaus Shelter by failing to provide appropriate veterinary care, failing to cooperate with animal rescue organizations, and improperly euthanizing animals. Additionally, Plaintiffs allege that Defendants retaliated against them for expressing criticism and making videos of the conditions inside the Stanislaus Shelter. Defendants allegedly banned Plaintiffs from the Stanislaus Shelter, forbade them from filming inside the Stanislaus Shelter, threatened to remove persons who expressed criticism from a networker email list, called the police on Plaintiff Carne claiming that Plaintiff Carne was harassing staff members, and falsely stated that Plaintiff Carne had threatened to run over Defendant Patton with a bus.

Plaintiffs initially filed suit against Defendants in the Stanislaus County Superior Court. The operative complaint is the First Amended Complaint. Doc. 1, Ex. B. Plaintiffs are proceeding under five causes of action: (1) liability under Cal. Gov. Code § 815.6 for failure to discharge a duty required by the Hayden Act; (2) petition for a writ of mandate under Cal. Code Civ. Proc. § 1085 for failure to discharge a duty required by the Hayden Act; (3) injunctive relief under Cal. Code Civ. Proc. § 526a to stop the illegal expenditure of public funds caused by the failure to comply with the requirements of the Hayden Act; (4) liability under 42 U.S.C. § 1983 for violation of First Amendment rights by a municipality instituting a policy; and (5) liability under 42 U.S.C. § 1983 for violation of First Amendment rights by individuals in their individual capacity. Defendants removed the case to the Eastern District of California, Fresno Division. Doc. 1.

Defendants filed a motion to dismiss all claims. Doc. 4. Plaintiffs filed a motion to remand causes of action two and three. Doc. 7. Plaintiffs also filed a motion for leave to amend, but then withdrew that request. Docs. 11 and 18.

## II. Legal Standard

"[I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy…." 28 U.S.C. § 1367(a). "A state law claim is part of the same case or controversy when it shares a 'common nucleus of operative fact' with the federal claims and the state and federal claims would

2

normally be tried together." Bahrampour v. Lampert, 356 F.3d 969, 978 (9th Cir. 2004). Section 1367(a) requires courts to exercise supplemental jurisdiction, while § 1367(c) provides "the exclusive means by which supplemental jurisdiction can be declined by a court." Executive Software N. Am., Inc. v. U.S. Dist. Court for the Cent. Dist. of Cal., 24 F.3d 1545, 1556 (9th Cir. 1994). Under § 1367(c), courts may decline to exercise supplemental jurisdiction if: "(1) the claim raises a novel or complex issue of State law; (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction; (3) the district court has dismissed all claims over which it has original jurisdiction, or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction." 28 U.S.C. § 1367(c). Courts have "discretion to keep, or decline to keep, [supplemental state law claims] under the conditions set out in § 1367(c)." Acri v. Varian Assocs., 114 F.3d 999, 1000 (9th Cir. 1997) (en banc). When deciding whether to exercise supplemental jurisdiction, "a federal court should consider and weigh in each case, and at every stage of the litigation, the values of judicial economy, convenience, fairness, and comity." City of Chi. v. Int'l Coll. of Surgeons, 522 U.S. 156, 174 (1997). The doctrine is flexible, "designed to allow courts to deal with cases involving pendent claims in the manner that most sensibly accommodates a range of concerns and values." Carnegie-Mellon University v. Cohill, 484 U.S. 343, 350 (1988). The propriety of exercising supplemental jurisdiction can be raised by the parties or sua sponte by the courts. See Acri v. Varian Assocs., Inc., 114 F.3d 999, 1001 n.3 (9th Cir. 1997) (en banc).

**III. Discussion**

**A. Case or Controversy**

Though the parties do not directly address the case or controversy requirement, the court analyzes the issue sua sponte because the nature of their arguments over remand raises issues of subject matter jurisdiction. The court has an independent obligation to confirm the existence of subject matter jurisdiction. Grupo Dataflux v. Atlas Global Grp., L.P., 541 U.S. 567, 593 (2004). "A state law claim is part of the same case or controversy when it shares a 'common nucleus of operative fact' with the federal claims and the state and federal claims would normally be tried

3

together." Bahrampour v. Lampert, 356 F.3d 969, 978 (9th Cir. 2004). There does not appear to be one definitive method for determining what qualifies. Instead, courts have various formulations for defining what constitutes a common nucleus of operative fact. Some courts consider: "(1) when the facts are related in time, space, origin or motivation; (2) when the facts form a convenient trial unit; and (3) when treating the facts as a unit would conform to the parties' expectations." St. Paul Mercury Ins. Co. v. Del Webb Cal. Corp., 2017 U.S. Dist. LEXIS 218342, *9 (C.D. Cal. Nov. 7, 2017), citing Apparel Art Int'l, Inc. v. Amertex Enters. Ltd., 48 F.3d 576, 584 (1st Cir.1995). Other courts consider more generally "whether the claims arise from the same facts, or involve similar occurrences, witnesses or evidence." Landy v. Pettigrew Crewing, Inc., 2019 U.S. Dist. LEXIS 203458, at *13 (C.D. Cal. Nov. 22, 2019), quoting Hudson v. Delta Air Lines, Inc., 90 F.3d 451, 455 (11th Cir. 1996). "Even a 'loose factual connection between the claims is generally sufficient.'" United States Chess Fed'n, Inc. v. Polgar, 2009 U.S. Dist. LEXIS 31606, at *8 (N.D. Cal. Apr. 13, 2009), quoting Ammerman v. Sween, 54 F.3d 423, 424 (7th Cir. 1995). Additionally, some courts have found that "there is no common nucleus of operative fact if there is no evidentiary overlap whatsoever between the claims." Jiangong Lei v. City of Lynden, 2014 U.S. Dist. LEXIS 162777, *9 (W.D. Wash. Nov. 20, 2014), citations and quotations omitted.

The conduct that gives rise to the state law claims is the Stanislaus Shelter's alleged mistreatment of animals. The conduct that gives rise to the federal claims is the Stanislaus Shelter's attempts to stop Plaintiffs when they tried to document and publicize that alleged mistreatment. There is some causal link between these two clumps of actions. Plaintiffs sought to videotape inside the Stanislaus Shelter because of the alleged mistreatment. The evidence that pertains to the state law claims focuses on how the Stanislaus Shelter's treatment of animals (namely veterinary care and decisions to euthanize) and how it cooperated with animal rescue organizations. The evidence related to the federal claim focuses on the attempt to film inside the Stanislaus Shelter, calls to the police about harassment, and a threat to cut off access to an email list. There is minimal overlap of evidence between the two.

In many cases when a Section 1983 claim was found to share a common nucleus of fact with state claims, the wrongful act complained of that gave rise to the claims was fundamentally

the same. See, e.g. LaShawn A. v. Barry, 87 F.3d 1389, 1396 (D.C. Cir. 1996) (violations of local laws regulating administration of the foster care system and a Section 1983 claim based on a private right of action created by the very same local law); Donlon v. Bd. of Educ., 2007 U.S. Dist. LEXIS 93492, *16 (W.D.N.Y. Dec. 20, 2007) (discriminatory and retaliatory employment acts against a public school teacher gave rise to both Section 1983 equal protection claim and state employment discrimination claim because "these claims concern similar conduct and will require similar evidence or the determination of similar facts"). That is not the situation in this case. The actions that underlie the state claims have to do with alleged mistreatment of the animals while the Section 1983 case is based on actions that potentially interfere with First Amendment free speech rights of humans.

When the acts are different, it appears that there is no common nucleus unless there is some evidentiary overlap. In one case, a Section 1983 claim against the City of Berkeley having to do with illegal search, seizure, and false arrest was found not to share a common nucleus of facts with a state claim against Alameda County for denial of medical treatment while being held in custody. Mays v. Berkeley, 1992 U.S. Dist. LEXIS 13585, *3 (N.D. Cal. June 26, 1992). Though the actions that form the basis of the federal claim (arrest of plaintiff) gave rise to the conditions that allowed the state claim to arise (incarceration), that causal connection was insufficient. In contrast, a Section 1983 claim for false arrest and malicious prosecution against a sheriff and district attorney was found to share a common nucleus of facts with a legal malpractice claim against a defense attorney because the evidence supporting all of the claims would overlap. Byrd v. Teater, 2008 U.S. Dist. LEXIS 12922, *60 (E.D. Cal. Feb. 19, 2008) ("There will be substantial overlap of evidence and witnesses in the adjudication of the malpractice claim because evaluating the elements of breach and causation would necessarily involve the validity of Byrd's claims of false arrest and wrongful prosecution for his criminal violations"). When there is no overlap in evidence, there is no common nucleus. Morgan v. JP Morgan Chase Bank, 2013 U.S. Dist. LEXIS 151439, *10 (D. Or. Oct. 22, 2013) ("The facts and elements that Plaintiff must plead and prove to establish her FDCPA claims are markedly different than those she must plead and prove to establish her legal-malpractice claims. Plaintiff's FDCPA claims are 'separately

maintainable and determinable without any reference to the facts alleged or contentions stated in or with regard to' Plaintiff's legal-malpractice claims"). As there is insufficient evidentiary overlap in this case, no common nucleus of operative facts exists such that the state claims forms part of the same case or controversy with the federal claim. This court lacks subject matter jurisdiction under 28 U.S.C. § 1367(a) to consider the state law claims.

Causes of action one, two, and three are remanded to the Superior Court, County of Stanislaus.

**B. Novel or Complex Issues of State Law**

Assuming arguendo that a common nucleus of operative facts did exist, this court would decline to exercise supplemental jurisdiction over the state law claims. Defendants have asked for relief under Cal. Gov. Code § 815.6, Cal. Code Civ. Proc. § 1085, and Cal. Code Civ. Proc. § 526a for violations of the Hayden Act. These statutory provisions are difficult for federal courts to enforce.

Section 1085 states that "A writ of mandate may be issued by any court to any inferior tribunal, corporation, board, or person, to compel the performance of an act which the law specially enjoins, as a duty resulting from an office, trust, or station, or to compel the admission of a party to the use and enjoyment of a right or office to which the party is entitled, and from which the party is unlawfully precluded by that inferior tribunal, corporation, board, or person." Cal. Code Civ. Proc. § 1085(a). Defendants argue that Section 1085 is not available as a remedy in federal court. Doc. 4-1, 13:5-9. Judge Mueller of the Sacramento Division of the Eastern District of California has recently held that "section 1085 does not apply to federal courts." Theis v. Yuba Cty. Sheriff's Dep't, 2019 WL 3006261, *7 (E.D. Cal. July 10, 2019), citing Hill v. County of Sacramento, 466 F. App'x 577, 579 (9th Cir. 2012). The Southern District of California declined to exercise supplemental jurisdiction explaining that "Because writs of mandate are exclusively state procedural remedies, they involve complex issues of state law." Mory v. City of Chula Vista, 2011 U.S. Dist. LEXIS 19874, *3-4 (S.D. Cal. Mar. 1, 2011); but see Twin Sisters Gun Club v. Emlen, 2018 U.S. Dist. LEXIS 43030, *15-16 (E.D. Cal. Mar. 14, 2018) ("both §§ 1085 and

1094.5 have been the subject of extensive litigation and are cited frequently, the Court does not believe they present novel or complex issues of state law"). On balance, the weight of the case authority counsels in favor of declining supplemental jurisdiction. See, e.g. Wynn v. Hedgpeth, 2012 U.S. Dist. LEXIS 6548, *15-16 (E.D. Cal. Jan. 19, 2012) ("a writ of mandate is exclusively a state law remedy, and district courts routinely deny supplemental jurisdiction over claims seeking a writ of mandate under section 1085"); Wilridge v. Kernan, 2018 WL 2431634, *4 (N.D. Cal. May 30, 2018); San Francisco Apartment Ass'n v. City & Cty. of San Francisco, 142 F. Supp. 3d 910, 917 n.2 (N.D. Cal. 2015).

Section 526a permits "An action to obtain a judgment, restraining and preventing any illegal expenditure of, waste of, or injury to, the estate, funds, or other property of a local agency, may be maintained against any officer thereof, or any agent, or other person, acting in its behalf, either by a resident therein, or by a corporation, who is assessed for and is liable to pay, or, within one year before the commencement of the action, has paid, a tax that funds the defendant local agency…." Cal. Code Civ. Proc. § 526a(a). Defendants assert that Plaintiffs lack standing to seek an injunction in this court, pointing to the difference in California and federal standards. Doc. 4-1. 13:11-24. "[A]lthough the [plaintiffs] may well have standing under California law to bring their suit in state court, that does not help them here. A party seeking to commence suit in federal court must meet the stricter federal standing requirements of Article III. California's lenient taxpayer standing requirements do not relieve the [plaintiffs] of the obligation to establish a direct injury under the more stringent federal requirements for state and municipal taxpayer standing." Cantrell v. City of Long Beach, 241 F.3d 674, 683 (9th Cir. 2001), citing ASARCO, Inc. v. Kadish, 490 U.S. 605, 618 (1989). Defendants point out that Plaintiff Carnes (the Section 526a claim is only raised by Plaintiff Carnes) does not "allege she owned or possessed any animals that were allegedly unlawfully euthanized, but also she fails to allege any direct pocketbook injury. Therefore, she does not have standing." Doc. 4-1, 13:25-27. Plaintiffs do not challenge this assertion that there is a lack of standing in federal court. Instead they ask for remand, arguing that "Plaintiffs initially filed this action in state court, and properly asserted taxpayer standing in order to bring the claim." Doc. 15, 12:20-21. This is another discrepancy between federal and state

court that has an impact on the claims in this case.

Additionally, the underlying state law question is whether the Hayden Act imposes duties in a manner that failure to discharge such duties gives rise to claims under Section 815.6, Section 1085, and Section 526a. This court's preliminary research indicates that this question has not yet been directly addressed. These are novel issues of state law. Cf. Pac. Bell Tel. Co. v. City of Walnut Creek, 428 F. Supp. 2d 1037, 1055 (N.D. Cal. 2006) ("Because the scope of AT&T's rights under § 7901 is a novel issue of state law, the Court will decline, pursuant to 28 U.S.C. § 1367(c), to assume supplemental jurisdiction"). Altogether, these legal complexities and the awkward interface between state and federal judicial systems in this case justifies exercising the discretion to decline supplemental jurisdiction.

**C. Motion to Dismiss and Motion to Amend**

Regarding Defendants' motion to dismiss and Plaintiffs' motion to amend, a new complaint focused solely on the Section 1983 causes of action would be helpful. The procedural posture of the motions is not straightforward. In response to the motion to dismiss, Plaintiffs filed a motion to amend, providing a proposed Second Amended Complaint that was written to explicitly "address[] several issues raised by Defendants in their recently filed Motion to Dismiss." Doc. 11, 3:4-5. However, Plaintiffs then decided to withdraw their request to amend while stating that the proposed Second Amended Complaint "serves as evidence that certain facts may be added to cure any deficiencies such that an amendment would not be futile." Doc. 18, 2:3-4. Plaintiffs' operative First Amended Complaint is dismissed with leave to amend. Plaintiffs should file an amended complaint that, in good faith, tries to cure any deficiencies pointed out by the motion to dismiss.

**IV. Order**

1. Plaintiffs' state claims (causes of action one, two, and three) are REMANDED to the Superior Court, County of Stanislaus for lack of subject matter jurisdiction.

2. With respect to the remaining federal claims (causes of action four and five),

Defendants' motion to dismiss is GRANTED with leave to amend.  Within twenty-one (21) days of the filing of this order, Plaintiff must file and amended complaint.

    3. The court recognizes that Plaintiffs' motion for leave to amend has been WITHDRAWN.

IT IS SO ORDERED.

Dated:   March 30, 2020                              _____
                                                    SENIOR  DISTRICT  JUDGE